IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCO GOMEZ | : | CIVIL ACTION |
| V. | : | |
| DAVID PITKINS, ET AL. | : | NO. 10-0955 |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL October 18, 2010
UNITED STATES MAGISTRATE JUDGE

Presently before this Court is a counseled petition for writ of habeas corpus properly filed by a state prisoner. Petitioner was convicted of attempted involuntary deviate sexual intercourse, sexual assault, indecent assault, and unlawful restraint, and was sentenced to an aggregate prison term of four and one-half to twelve years. As set forth more fully below, it is recommended that Petitioner's habeas petition be denied and dismissed without an evidentiary hearing.[1]

### FACTUAL BACKGROUND

The factual background of the case was set forth by the trial court, and then the Superior Court, as follows:

> [Petitioner's] convictions stem from his Sexual Assault on nineteen[-]year[-] old complainant A.D. ([d.o.b.] 3/22/85) on November 30, 2004, in the city of Philadelphia. [Petitioner,] who was thirty years old, knew complainant because he worked in Paulino's Grocery Store, at 4984 Thompson Street, just five minutes away from [complainant's] house. Complainant suffered from mental health issues

---

[1] In preparing this Report and Recommendation, I have reviewed the Petition for Writ of Habeas Corpus, the Memorandum of Law in Favor of the 2254 Petition, the Response to the Petition for the Writ of Habeas Corpus, the Reply to the Commonwealth's Memorandum of Law in Opposition to Habeas Corpus Relief, and the Response to Petitioner's Reply.

and lived with her parents and nine siblings. That morning, complainant walked to the store to buy snacks for herself and her brother, Marvin. Complainant came into the store while [Petitioner] was working, and he asked her if she wanted free chips and a soda, and if she "wanted to have his baby[.]" Complainant told [Petitioner] she was "too young" to have babies and [Petitioner] told her if she still wanted the free chips and soda, to follow him into the cellar. Once inside the cellar, [Petitioner] locked the door behind complainant, and started kissing complainant on her neck and mouth and pulling down her pants. Complainant tried to back away but stumbled backwards, and [Petitioner] put his fingers in her vagina and started fondling her. [Petitioner] tried to force complainant to perform oral sex, but when she did not comply, he grabbe[d] her hand and placed it on his penis, forcing her to masturbate him. Complainant continued to struggle with [Petitioner], but he managed to turn her over so that she was facing the ground and he penetrated her vaginally from behind with his penis. [Petitioner] tried to penetrate her anally, but complainant jumped when he touched her anus, and he resumed vaginal sex with her until he ejaculated onto the floor.

[Petitioner] began bleeding from his penis, where complainant had apparently scratched him with her fingernails, and told complainant, "Mommy, something wrong with you. You sick. You sick[.]" Complainant responded, "I'm healthy, I didn't ask for this." When [Petitioner] went to the bathroom to clean up, complainant tried to leave the cellar but couldn't get out, and had to wait for [Petitioner] to hose down the basement floor before he unlocked the door.

Complainant went home and took a bath. She did not tell her brother what [had] happened, but did tell her brother's girlfriend, Felicia Kerrigan, over the phone that she had been raped. Complainant told her parents that evening when her father came home from work, and they called the police. Complainant was transported to the store in a marked police car, where she identified [Petitioner] as the man who had sex with her in the basement.

Complainant was taken to the hospital where she had a rape kit test done, and [Petitioner] was arrested and transported to the Special Victims Unit. There, he was met by Detectives Brian Peters and Norma [Serrano], who informed him in both English and Spanish, that he had been accused of rape. [Petitioner] became very excited and spoke quickly in both English and Spanish, explaining what happened. [Petitioner] told the detectives that complainant was sick, and that she had cut him on his penis. The detective interrupted [Petitioner] and *Mirandized* him in both languages. [Petitioner] answered that he understood his *Miranda* rights, and repeated his earlier statement to detectives that he had consensual sex with complainant, and that she had cut him on his penis. After talking to [Petitioner], the detectives went to the hospital, and took complainant's statement. The detectives obtained consent from the owner of the grocery store the following

> day to search the store, and took photographs of the store cellar.
>
> Complainant's rape kit tested negative for the presence of sperm in and around her vagina, mouth or anus, and when detectives went to the store cellar to examine the area, they found that the cellar floor had been hosed down, and was still damp.
>
> After examining the store cellar, [D]etective Peters returned to Central Detectives, where he took pictures of [Petitioner's] penis with [Petitioner's] co-operation, but [Petitioner] did not give a formal statement to police. From that information, the detective prepared a formal police report, and the photographs taken of [Petitioner's] body and the store cellar, and the results of complainant's rape kit test were placed on property receipts.

*Commonwealth v. Gomez*, 963 A.2d 565, No. 2447 EDA, at 1-3 (Pa. Super. 2008)(unpublished memorandum)(internal footnote omitted).

Petitioner was convicted of attempted involuntary deviate sexual intercourse, sexual assault, indecent assault, and unlawful restraint on April 18, 2006. On July 26, 2006, he was sentenced to an aggregate prison term of four and one-half to twelve years in prison and compliance with Megan's Law.[2]

Petitioner timely appealed to the Pennsylvania Superior Court raising three claims: (1) that the trial court erroneously denied his motion to suppress his statement to the police; (2) that the trial court erred in not suppressing the photographs of his penis; and (3) that the evidence was insufficient to sustain his convictions. The Superior Court, in an unpublished memorandum opinion dated September 25, 2008, rejected all of his claims. *Gomez*, 963 A.2d 565, No. 2447 EDA. On April 29, 2009, The Pennsylvania Supreme Court denied his petition for allowance of appeal. *Commonwealth v. Gomez*, 970 A.2d 429 (Pa. 2008).

Petitioner did not seek state collateral relief. He instead filed the instant petition for

---

[2] 42 Pa.C.S. § 9781 *et seq.*

habeas corpus relief on March 5, 2010, and submitted a Memorandum of Law in support of his petition on April 15, 2010. In the petition, Petitioner asserts the following four claims: 1) the trial court erred in failing to suppress Petitioner's statement to the police because it was not voluntary and was given without *Miranda* warnings; 2) the trial court erred in failing to suppress photographs of Petitioner's penis; 3) the trial court erred in finding Petitioner guilty of involuntary deviate sexual intercourse, indecent assault, and sexual assault because the evidence was inconsistent and insufficient as a matter of law; and 4) the Pennsylvania courts denied Petitioner Equal Protection and Due Process under the law. *Petition for Writ of Habeas Corpus*, [Doc. 1], at 7-8.[3]

## APPLICABLE STANDARDS

Petitioners may obtain federal habeas corpus review of their state court convictions only after exhausting all remedies available in the state court system. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This exhaustion requirement is met when a petitioner "fairly present[s]" his or her case to the state courts so that they have the opportunity to remedy alleged constitutional violations. *Duncan v. Henry*, 513 U.S. 364, 365 (1995)*(per curiam)*. Fair presentation entails presentation of the same legal claim, *i.e.*, the same legal theory applied to the same facts, at all levels of the state judicial system. *Lines v. Larkins*, 208 F.3d 153, 159 (3d. Cir. 2000). Petitioners bear the burden of proving that they have exhausted all state remedies for their claims. *Toulson v. Beyer*, 987 F.2d 984, 987 (3d. Cir. 1993). Claims that fail to exhaust all state remedies are generally unreviewable in federal court, by procedural default,

---

[3]This last claim does not appear in Petitioner's Memorandum of Law, but rather is incorporated into the insufficiency of evidence challenge.

4

due to an "independent and adequate state procedural rule." *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). This procedural default is necessary to vindicate the federal exhaustion rule; lacking such a check, petitioners would ignore state procedural rules, thus circumventing the exhaustion requirement. *O'Sullivan*, 526 U.S. at 848.

Review of procedurally defaulted claims is very narrow, limited to instances where the petitioner can show cause for the default and actual prejudice, or a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause" is proven when a petitioner "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" is proven when errors at trial "worked to [a Petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (emphasis in original). By contrast, "miscarriage of justice" is proven only when new evidence exculpates the petitioner of the crime. *Schlup v. Delo*, 513 U.S. 298, 321 (1995).

A second hurdle that petitioners must meet in order to attain habeas corpus review of their claims is of a temporal dimension. Typically, petitioners must file their habeas petitions within one year from the date that their judgment of conviction becomes final. 28 U.S.C. § 2244(d)(1). Alternatively, the one-year statute of limitations may begin to toll from one of three points in time: (1) "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;" (2) "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review;" or (3) "the date on which the factual predicate of the claim or claims

5

presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A)-(D).

I note briefly that Petitioner has cleared this procedural hurdle. The Pennsylvania Supreme Court denied *allocatur* on April 29, 2009. Petitioner filed the instant petition less than one year later, on March 5, 2010. Thus, Petitioner has satisfied the applicable statute of limitations period. I move on to review the substance of his claims below.

## DISCUSSION

I will discuss the merit of Petitioner's four claims in order, recommending ultimately that his petition be denied on the merits.

### 1. Suppression of Statement to Police

Petitioner argues that the Pennsylvania courts erred in failing to suppress his statement to the police about his penis being cut by the victim. *Memorandum of Law in Support of 2254 Petition*, [Doc. 7] at 15-17. Specifically, he argues that *Miranda* warnings were not given prior to his statements despite the fact that he was subjected to custodial interrogation. *Id.* at 17.

It is axiomatic that before a suspect may undergo custodial interrogation, he must be warned of his right to remain silent and his right to an attorney. *Miranda v. Arizona*, 384 U.S. 436 (1966). The necessity of *Miranda* warnings stems from the way in which interrogations of suspects occur, defined by the Supreme Court as "incommunicado interrogation of individuals in a police-dominated atmosphere." *Id.* at 445. "Custodial interrogation" has been refined by the Supreme Court in the fifty-plus years of jurisprudence stemming from *Miranda*. A suspect is "in custody" if there is a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Behler*, 463 U.S. 1121, 1125 (1983)(citation omitted).

"Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977)(*per curiam*)(citation omitted). Idle questions or banter does not suffice; "express questioning or its functional equivalent" is required for interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980). "That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Id.* at 301.

Statements volunteered or blurted-out by the suspect to police authorities do not fall within the purview of *Miranda*. *Miranda*, 384 U.S. at 478. Stated another way, "unforeseeable" responses to police questions or actions do not invoke *Miranda*. *Innis*, 446 U.S. at 302. The Third Circuit has also made it clear that providing a suspect with information regarding potential charges does not place a suspect in custodial interrogation. *United States v. Benton*, 996 F.2d 642, 644 (3d Cir. 1993).

Here, the record states that after Petitioner was arrested, he was transported to the police department's Special Victim's Unit. N.T., 4/6/06, at 7-8. Detectives informed Petitioner why he had been arrested. *Id.* at 8. Petitioner responded by telling his version of the facts, describing how the victim had cut him. *Id.* at 9. At this point, the detectives stopped Petitioner and read him his *Miranda* rights in English and Spanish. *Id.* at 9. Petitioner indicated that he understood his rights but that he did not wish to remain silent. N.T., 4/11/06, at 114. Petitioner then began to re-tell his story, again stating that he had consensual sex with the victim and that she had cut him. *Id.* at 116. Detective Brain Peters testified that when they had provided Petitioner with

7

information as to why he had been arrested, they had no intention of taking or eliciting a statement from him. *Id.* at 20. Nevertheless, Petitioner voluntarily offered his story. *Id.* at 11.

It is evident that Petitioner was in custody when he made his statement to the detectives. However, it is equally apparent that he was not in custodial interrogation. The detectives had merely told Petitioner why he had been arrested before he began to voluntarily offer his side of the story. This, in and of itself, does not constitute custodial interrogation. *Benton*, 996 F.2d at 644. Further, there was no "express questioning or its equivalent" by the officers. *Innis*, 446 at 300-301. Without prompting by the detectives, this statement is a "blurt-out," completely unforeseeable from the actions of the detectives. *Id.* at 301. Thus, because Petitioner was not in custodial interrogation when he made his statement, his *Miranda* challenge is meritless.[4]

## 2) Suppression of Photographs

Petitioner alleges that his Fourth Amendment rights were violated when the police searched his penis and body after he was arrested without consent that was knowing, voluntary, or intelligent, and without a warrant. *Memorandum of Law*, [Doc. 7], at 17.

It is hornbook law that a federal court should not grant a state prisoner habeas corpus relief for evidence allegedly procured in violation of the Fourth Amendment when the petitioner has already had an "opportunity for full and fair litigation" on the claim at trial. *Stone v. Powell*, 428 U.S. 465, 482 (1976). "Even otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them." *Deputy*

---

[4]The Commonwealth also argues that Petitioner has voluntarily waived his *Miranda* rights by giving his statement despite sufficient *Miranda* warnings, and that the statement was only used for impeachment purposes at trial, a permissible practice even with statements suppressed under *Miranda*. Satisfied that Petitioner was not under custodial interrogation when the statement was made, I refrain from reaching on these questions.

*v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1994).

As the record clearly reflects, Petitioner asserted his Fourth Amendment claim at all levels of the state courts. The Superior Court engaged in a lengthy discussion of the merits of the claim, ultimately finding that a warrant was unnecessary because Petitioner had consented to the search. *Gomez*, 963 A.2d 565, No. 2447 EDA, at 10-12. Because Petitioner has been afforded a full and fair opportunity to litigate the Fourth Amendment claim, I am barred from considering the claim by *Stone*.[5]

### 3. Insufficiency of Evidence

Petitioner challenges the sufficiency of the evidence sustaining his convictions of involuntary deviate sexual intercourse, indecent assault, and sexual assault. *Memorandum of Law*, [Doc. 7], at 22. Petitioner, however, only challenged his convictions for involuntary sexual deviate intercourse and sexual assault on direct appeal to the Superior Court. *Gomez*, 963 A.2d 565, No. 2447 EDA, at 14. Thus, Petitioner's claim as to the sufficiency of his indecent assault conviction has not been fully exhausted at state court, and is procedurally defaulted. 28 U.S.C. § 2254(b)(1)(A); *Gray*, 518 U.S. at 161-62. I will discuss the merit of his claims involving his other convictions below.

Sufficiency claims are very difficult to make out on habeas. The Supreme Court has

---

[5]Petitioner states that he should have been given *Miranda* warnings in Spanish before the picture was taken. *Memorandum of Law,* [Doc. 7], at 20. I rebuff the attempt to circumvent *Stone* by invoking *Miranda* and Fifth Amendment concerns. There is no caselaw establishing that suspects are entitled to a second set of *Miranda* warnings prior to a search. Indeed, caselaw suggests the opposite. *See Schmerber v. California*, 384 U.S. 757, 765 (1966) (noting that a suspect need not be advised of *Miranda* rights before being compelled to reveal non-testimonial evidence). Thus, this remains a Fourth Amendment claim clearly barred from consideration by *Stone*.

9

made clear that federal court habeas review of sufficiency claims is limited to "whether, after viewing evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 309, 319 (1979)(emphasis in original). This standard became even more stringent with the advent of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[6] Per the statute, a federal habeas court is statutorily prohibited from granting a writ of habeas corpus on a claim adjudicated on the merits in state court, unless that adjudication: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d)(1) & (2).

Thus, under 28 U.S.C. § 2254(d)(1)**, a writ of habeas corpus may be issued for a challenge to the sufficiency of evidence only if the state courts have unreasonably applied either the *Jackson* "no rational trier of fact standard,"** or the state equivalent of the *Jackson* standard. The Third Circuit has established that the state standard for insufficiency of evidence is the same as *Jackson*. *Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1232 (3d. Cir. 1992).

Instantly, Petitioner fails to demonstrate how the state courts have unreasonably applied the *Jackson* standard. Indeed, the Superior Court examined both the involuntary deviate sexual intercourse and sexual assault charges in a lengthy and well-reasoned manner, ultimately finding that the evidence was sufficient for convictions of both crimes:

---

[6]28 U.S.C. § 2241 *et seq.*

> The victim testified that [Petitioner] forced his penis into her vagina, that he attempted to put his penis in her anus and also attempted to force her to have oral sex with him. N.T., 4/6/06, at 66-75. The jury believed the victim's testimony and convicted [Petitioner] despite the purported inconsistencies and lack of physical evidence. *See [Commonwealth v.] Jette*, 818 A.2d [533,] 534 [(Pa. Super. 2003)](stating that the jury is free to believe all, part or none of the victim's testimony and that if the jury finds the testimony believable, this testimony is alone sufficient to convict). There is no indication that this testimony was inherently unreliable as claimed by [Petitioner]. Based upon this testimony, the evidence is sufficient to demonstrate [Petitioner] attempted to commit [involuntary sexual deviate intercourse] as he attempted to force the victim to perform oral and anal sex with him. *See Commonwealth v. Ogrod*, 839 A.2d 294, 318-19 (Pa. 2003)(concluding that defendant was guilty of attempted ISDI where he intended to force the victim to have oral and vaginal sex with him and he took actions which constituted a substantial step towards that goal). Further, the evidence was sufficient to demonstrate that [Petitioner] committed a sexual assault as the victim testified that [Petitioner] inserted his penis into her vagina without her consent. *See Commonwealth v. Andrulewicz*, 911 A.2d 162, 166 (Pa. Super. 2006)(stating that the evidence was sufficient to show a sexual assault where a jury accepted the victim's uncorroborated characterization of a lack of consent when the defendant put his penis into her vagina).

*Gomez*, 963 A.2d 565, No. 2447 EDA, at 14. It is clear that the state courts acted reasonably in applying *Jackson*, and their determinations must be respected under AEDPA. Thus, Petitioner's sufficiency of evidence claims are meritless.

### 4. Denial of Equal Protection and Due Process[7]

Petitioner's fourth and final claim is that the Pennsylvania Courts used an incorrect standard of review when reviewing his convictions. *Petition for Writ of Habeas Corpus*, [Doc. 1], at 8. Specifically, Petitioner argues that Pennsylvania caselaw establishes that "where

---

[7]As noted, Petitioner's Memorandum of Law and Reply to Commonwealth's Memorandum of Law lump this final claim into the sufficiency of the evidence claim. I discuss this claim separately for two reasons. First, Petitioner broke the claims apart in his initial Petition for Habeas Corpus Relief. Second, Petitioner confuses the difference between weight of the evidence claims and sufficiency of the evidence claims. Though phrased as a sufficiency of the evidence claim, it is actually a weight of the evidence claim, which must be disposed of separately from Petitioner's valid sufficiency of evidence claim.

11

evidence is inherently inconsistent and unreliable it is insufficient as a matter of law." *Memorandum of Law*, [Doc. 7], at 24. In his habeas petition, Petitioner claims that this standard was not used by the Pennsylvania Courts, and thus he was denied Equal Protection and Due Process. *Petition for Writ of Habeas Corpus*, [Doc. 1], at 8. In his memorandums of law filed after his habeas petition, however, Petitioner lumps this final claim into the sufficiency of the evidence claim. *Memorandum of Law*, [Doc. 7], at 24. As explained below, neither assertion is tenable, as the claim is a weight of the evidence claim not cognizable on habeas corpus review.

Weight of the evidence claims are not cognizable on federal habeas review because witness credibility lies within the province of the jury. *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982); *Alamo v. Frank*, No. 97-3022, 1999 WL 79659, n.2 (E.D. Pa. 1999) ("It is beyond the province of this court to determine the weight, as opposed to the sufficiency, of the evidence."). *See also* 28 U.S.C. § 2254(e)(1)(stating that state court findings of fact are presumed correct in habeas proceedings).

Here, Petitioner argues that the victim's testimony was inconsistent for a variety of reasons. He argues that she was unable to tell fantasy from reality; that her family members did not initially believe that she had been raped; that she did not scream during the rape; that she did not immediately report the rape; and that she had a history of mental illness.[8] *Memorandum of Law*, [Doc. 7], at 25-26. However, Petitioner fails to demonstrate how such facts go to

---

[8]Petitioner also finds inconsistency in the fact that the jury did not convict him of rape despite clear testimony from the victim that she had been raped, but convicted him for the other lesser charges. However, it is well-settled that inconsistent verdicts are permissible in criminal cases. *U.S. ex rel Hatrak v. Hubbard*, 588 F.2d 414, 418-19 (3d Cir. 1978).

the sufficiency of the evidence. Rather, these concerns, dealing with the credibility of the victim as a witness, go to the weight of the evidence, which I cannot consider here. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("§ 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").[9]

Petitioner invokes *Commonwealth v. Karkaria* for the inverse proposition, that habeas courts are entitled to reevaluate the credibility of witnesses. Indeed, Petitioner is correct in stating that the Pennsylvania Supreme Court has, in its own words, "made exception to the general rule that the jury is the sole arbiter of the facts where the testimony is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture." *Commonwealth v. Karkaria*, 625 A.2d 1167, 1170 (Pa. 1993). Petitioner's reliance on *Karkaria* is misplaced, however, as *Karkaria* dealt with a sufficiency of the evidence challenge as opposed to a weight of the evidence challenge. *See id.*, at 1170, n.3 ("An allegation that the verdict is against the 'weight' of the evidence is a matter to be resolved by the trial court: while there may be some legitimacy for a trial court, who has also observed the witnesses as they testified, to consider the weight of the evidence and to that extent review the jury's determination of credibility, there is surely no justification for an appellate court, relying upon a cold record, to exercise such a function.")(citation omitted). Even assuming, *arguendo*, that under such

---

[9]I further note that because this is a weight of the evidence claim, it was not properly raised in the state courts, and thus is procedurally defaulted. 28 U.S.C. § 2254(b)(1)(A); *Gray*, 518 U.S. at 161-62.

circumstances habeas courts were authorized to readjudicate the credibility of witnesses,[10] it is obvious that the present case does not meet *Karkaria*'s "inherently unreliable" standard. As described above, the victim's testimony was consistent and backed up by other corroborating evidence, such as testimony by the police officers. *See Commonwealth v. Ramos*, 827 A.2d 1195, 1198, n.7 (Pa. 2003) (*Karkaria* only applicable when *sole* evidence of Commonwealth is unreliable and inconsistent testimony). Thus, Petitioner's fourth claim is also meritless.

## RECOMMENDATION

For the reasons stated above, it is recommended that the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. §2254, be DENIED AND DISMISSED WITHOUT AN EVIDENTIARY HEARING. It is further recommended that a finding be made that there is no probable cause to issue a certificate of appealability.

BY THE COURT:

S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

---

[10]I note that this proposition is untenable. Even the *Karkaria* Court noted the extraordinariness of its holding, stating "traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution." 625 A.2d at 1170. While state appellate courts may thus be authorized, under extraordinary circumstances, to review credibility of witnesses, federal habeas courts may not do so because they are bound by 28 U.S.C. § 2254. The statute strictly mandates that factual determinations made in state court are presumed correct, 28 U.S.C. § 2254(e)(1), and does not authorize habeas courts to reevaluate credibility of witnesses. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("§ 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
Robert N.C. Nix, Sr. Federal Building, Suite 211
900 Market Street
PHILADELPHIA, PENNSYLVANIA 19107-4228

**Chambers of**
M. FAITH ANGELL                                     P:  (215) 597-6079
United States Magistrate Judge                      F:  (215) 580-2165

*FAX / MAIL COVER SHEET*

**CASE NO.**   10-0955                              **DISTRICT COURT JUDGE:** MSG
                                                    267-299-5056

**TODAY'S DATE**:  October 18, 2010                 **LAW CLERK'S INITIALS**: LFS

**VIA FAX:**

Jerome M. Brown, Esq.                               215-751-9739
Anne Palmer, Esq.                                   215-686-5725